Case: 14-51148 Document: 00513141241 Page: 1 Date Filed: 08/04/2015
Case 1:15-cv-01052-MBH Document 1-4 Filed 09/21/15 Page 1 of 16
Case 3:13-cv-00196-FM Document 52 Filed 08/04/15 Page 1 of 16

**FILED**

**SEP 21 2015**

**US COURT OF FEDERAL CLAIMS**

## United States Court of Appeals
FIFTH CIRCUIT
OFFICE OF THE CLERK

LYLE W. CAYCE
CLERK

TEL. 504-310-7700
600 S. MAESTRI PLACE
NEW ORLEANS, LA 70130

August 04, 2015

Ms. Jeannette Clack
Western District of Texas, El Paso
United States District Court
525 Magoffin Avenue
Room 108
El Paso, TX 79901-0000

**15-1052  C**

No. 14-51148    Mohd Refaei v. John McHugh
                USDC No. 3:13-CV-196

Dear Ms. Clack,

Enclosed is a copy of the judgment issued as the mandate and a copy of the court's opinion.

Enclosed for the district court and counsel is the approved bill of costs.

Sincerely,

LYLE W. CAYCE, Clerk

*Melissa Mattingly*

By: _____
Melissa V. Mattingly, Deputy Clerk
504-310-7719

cc:
    Mr. Eduardo R. Castillo
    Mr. Matthew R. McLain
    Mr. Robert L. Sirianni Jr.

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 14-51148
Summary Calendar

United States Court of Appeals
Fifth Circuit
**FILED**
June 11, 2015
Lyle W. Cayce
Clerk

MOHD N. REFAEI,

    Plaintiff - Appellant

v.

JOHN M. MCHUGH, Secretary of Department of the Army,

    Defendant - Appellee

Appeal from the United States District Court
for the Western District of Texas
USDC No. 3:13-CV-196

Before KING, JOLLY, and HAYNES, Circuit Judges.
PER CURIAM:*

    Plaintiff-Appellant Mohd N. Refaei brings various claims arising out of his termination from a residency program at the William Beaumont Army Medical Center in El Paso, Texas. The district court dismissed Refaei's state law claims and granted summary judgment in favor of the Government on his federal discrimination claims. For the following reasons, we AFFIRM in part,

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

VACATE in part, and REVERSE and REMAND in part the judgment of the district court.

## I. Factual and Procedural Background

Plaintiff-Appellant Mohd N. Refaei, a practicing Muslim, was born in 1965 in what is today the United Arab Emirates and became a naturalized United States citizen in 2001. Refaei obtained his medical degree in 2005 at the Belize Medical College. In 2008, Refaei was accepted into an internal medicine residency program with the Department of Veterans Affairs at the William Beaumont Army Medical Center (the "WBAMC") in El Paso, Texas.

Each residency program at the WBAMC is headed by a Program Director, a specialist responsible for the day-to-day operations of the program. In addition, the WBAMC has a General Medical Education Committee (the "GMEC"), which supervises the various programs and Program Directors. The GMEC is comprised of representatives of the WBAMC's residency programs and is chaired by the Director of Medical Education (the "DME").[1] Moreover, each residency program has its own education committee.

Disciplinary action against residents at the WBAMC may take various forms, three of which are relevant here. First, there is Program Level Remediation ("PLR")—which typically lasts 60 days—during which program leadership provides additional resources to residents who are struggling in their residency program. If a resident's deficiencies persist, the resident may be placed on probation. This is a formal method of discipline, with more structured guidelines and expectations for the resident's improvement; generally, probation is given where it is believed that a resident is not academically prepared to be an independent practitioner. If the WBAMC

---

[1] The DME's immediate supervisor is the Deputy Commander of the hospital, while the DME's second-level supervisor is the hospital's Commander.

2

Case 14-51148    Document 00513141172    Page: 3    Date Filed: 08/04/2015
Case 3:13-cv-00196-FM Document 52 Filed 08/04/15 Page 4 of 16

No. 14-51148

ultimately determines that a resident lacks necessary skills to perform as an independent practitioner, he or she may be terminated from the program and not allowed to graduate. A Program Director does not have the authority to take formal disciplinary action against a resident. Rather, a Program Director may make a recommendation of discipline—either PLR, probation, or termination—to the program's education committee. With respect to PLR, if the education comm9ittee agrees that such remediation is needed, the resident is placed on PLR. With respect to formal discipline—probation or termination—if the education committee agrees that such action is appropriate, the recommendation is forwarded to the GMEC. The GMEC then conducts a hearing, during which both the Program Director and the resident (who may be represented by counsel) have the opportunity to present their cases. After the hearing, the GMEC casts anonymous ballots on whether to take formal disciplinary action. If the GMEC recommends probation, the resident is placed on probation. If the GMEC recommends termination, the recommendation is forwarded to the Deputy Commander. If the Deputy Commander agrees, the resident may appeal to the Commander. After considering the evidence, the Commander then makes a final decision regarding termination.

The WBAMC's three-year internal medicine residency program consists of three levels: PGY-1, PGY-2, and PGY-3. A resident must successfully complete each level in order to complete the program. As a PGY-1 resident, Refaei struggled. After a recommendation of the Program Director at the time, Dr. Kent DeZee, the internal medicine education committee voted to place Refaei on PLR in September 2008. Because Refaei continued to have deficiencies in patient care, practice-based learning, and professionalism, Dr. DeZee recommended that Refaei be placed on probation in November 2008.

No. 14-51148

The internal medicine education committee concurred, as did the GMEC, and Refaei was placed on 90-day probation in December 2008. Refaei showed some improvement, completed his probationary period, and ultimately completed PGY-1. During Refaei's second year, as a PGY-2 resident, Refaei was again placed on PLR for deficiencies in medical knowledge and professionalism; at this time, Dr. Michael Cole was the Program Director. Refaei ultimately made it to his PGY-3 year, during which he was again placed on probation on Dr. Cole's recommendation. Refaei's probation, beginning in July 2011, was triggered by, among other concerns, a report that Refaei gave a poor sign-out to the oncoming night resident and failed to check the progress of both of his interns' work. On July 28, 2011, Refaei was given a notice of probation, which advised Refaei of the minimum acceptable standards required to be an independent physician, including: (1) "provide appropriate AND adequate documentation on all clinical notes including the documentation of your 'Assessment and Plan' sections that is representative of a PGY[-]3 level resident;" (2) "[p]rovide appropriate AND adequate sign-out to your fellow residents;" and (3) "[d]emonstrat[e] that you are ready to take a leadership role . . . by accomplishing all of the above while teaching junior trainees."

Two days after receiving the notice of probation, Refaei engaged in conduct prompting his termination from the program. According to the recommendation for termination written by Dr. Cole, Refaei was the senior resident on duty when one of his patients went into severe distress, prompting intervention from the WBAMC's Rapid Response Team. Refaei failed to transfer the patient to the intensive care unit, and failed to inform the attending physician of the significant change in his patient's status. Moreover, Refaei failed to ensure that the incident was adequately documented in the patient's record. The recommendation for termination noted that Refaei's

4

Case: 14-51148 Document: 00513141172 Page: 5 Date Filed: 08/04/2015
Case 3:13-cv-00196-FM Document 52 Filed 08/04/15 Page 6 of 16

No. 14-51148

conduct was in violation of the first and third conditions of probation discussed above. The internal medicine education committee voted unanimously to recommend Refaei's termination, as did the GMEC (after a hearing at which Refaei was represented by counsel). The decision was affirmed both by the Deputy Commander and, after an appeal, by the Commander.

Refaei filed the present action on June 18, 2013.[2] Refaei asserted claims for: (1) discrimination, under Title VII of the Civil Rights Act of 1964 and the Age Discrimination in Employment Act of 1967 ("ADEA"), on the basis of national origin (Emerati), religion (Muslim), and age (over 40); (2) breach of contract; (3) intentional infliction of emotional distress ("IIED"); and (4) defamation. The Government filed a motion to dismiss the latter three claims, in response to which Refaei abandoned his claims for IIED and defamation. The district court dismissed the breach of contract claim with prejudice, concluding that the claim was preempted under Title VII, the ADEA, and the Civil Service Reform Act. The Government moved for summary judgment on the remaining claims, and the district court granted the motion. Refaei timely appeals.

## II. Standard of Review

We review de novo a district court's order granting a defendant's motion for summary judgment, applying the same standard as did the district court. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 163 (5th Cir. 2006). "Summary judgment is appropriate 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Johnston & Johnston v. Conseco Life Ins. Co.*, 732 F.3d

---

[2] Refaei previously received an administrative decision from the Department of the Army rejecting his claims of discrimination.

5

Case 1:15-cv-01052-MBH   Document 1-4   Filed 09/21/15   Page 7 of 16
Case: 14-51148     Document: 00513141172     Page: 6     Date Filed: 08/04/2015
Case 3:13-cv-00196-FM   Document 52   Filed 08/04/15   Page 7 of 16

No. 14-51148

555, 561 (5th Cir. 2013) (quoting Fed. R. Civ. P. 56(a)). We view the evidence in the light most favorable to the non-moving party. *United Fire & Cas. Co. v. Hixson Bros. Inc.*, 453 F.3d 283, 285 (5th Cir. 2006).

"We review questions of subject matter jurisdiction *de novo*." *Bissonnet Invs. LLC v. Quinlan (In re Bissonnet Invs. LLC)*, 320 F.3d 520, 522 (5th Cir. 2003).

### III.  Discussion

#### A.  Discrimination Claims

Refaei contends that he was terminated on the basis of his age, his religion, and his national origin. Because Refaei seeks to prove these claims through circumstantial evidence, we review the district court's grant of summary judgment under the burden-shifting framework delineated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973). *See Squyres v. Heico Cos., LLC*, 782 F.3d 224, 231 (5th Cir. 2015) (applying the *McDonnell Douglas* framework to ADEA claims). "Under that framework, the plaintiff must first establish a prima facie case of discrimination, which requires a showing that the plaintiff (1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside his protected group or was treated less favorably than other similarly situated employees outside the protected group." *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007) (per curiam). "If the plaintiff makes a prima facie showing, the burden then shifts to the employer to articulate a legitimate, nondiscriminatory . . . reason for its employment action." *Id.* at 557. "[I]f the employer meets its burden of production, the plaintiff then bears the ultimate burden of proving that the employer's proffered reason is not true but instead is a pretext for the real discriminatory . . . purpose." *Id.* We need not address

6

Case 1:15-cv-01052-MBH Document 1-4 Filed 09/21/15 Page 8 of 16
Case: 14-51148 Document: 00513141172 Page: 7 Date Filed: 06/04/2015
Case 3:13-cv-00196-FM Document 52 Filed 08/04/15 Page 8 of 16

No. 14-51148

whether Refaei has sufficiently proven that the Government's reason for his termination was pretextual, as we conclude that Refaei has failed to establish a prima facie case of discrimination.

In order to establish his prima facie case, Refaei was required to show that "he was treated less favorably because of his membership in that protected class than were other similarly situated employees who were not members of the protected class, under nearly identical circumstances."[3] *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009). Making that showing requires that Refaei provide evidence of sufficient "comparators." *See id.* Refaei has failed to do so. The only evidence of such comparators comes from Refaei's own affidavit summarizing other residents' "egregious mistakes," for which they were not terminated. Even assuming such evidence meets the requirements of Federal Rule of Civil Procedure 56(c),[4] it is nonetheless insufficient to fulfill this element of Refaei's prima facie case. As an initial matter, because the affidavit fails even to identify the ages, national origins, or religions of these

---

[3] Although this is not an express element of the prima facie case under the ADEA, an ADEA plaintiff must nonetheless show that "he was either i) replaced by someone outside the protected class, ii) replaced by someone younger, or iii) otherwise discharged because of his age." *Rachid v. Jack In The Box, Inc.*, 376 F.3d 305, 309 (5th Cir. 2004) (internal quotation marks omitted). Here, Refaei has provided no evidence that he was replaced by someone younger or outside his protected class. In support of his prima facie case, Refaei relies exclusively on evidence that other similarly situated residents were treated more favorably than he was. In order to show that he was otherwise discharged because of his age via such disparate treatment, Refaei was required to show that he was treated less favorably than younger "similarly situated" employees in "nearly identical circumstances." *Berquist v. Wash. Mut. Bank*, 500 F.3d 344, 353 (5th Cir. 2007) (internal quotation marks omitted); *see Hinga v. MIC Grp., L.L.C.*, --- F. App'x ---, No. 14-20616, 2015 WL 2084021, at *3 (5th Cir. May 6, 2015) (unpublished).

[4] Refaei's affidavit does not state, or otherwise indicate, that it is based on his personal knowledge, but rather appears to be based on hearsay. *See* Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.").

7

Case 1:15-cv-01053-MBH Document 1-4 Filed 09/21/15 Page 9 of 16
Case: 14-51148 Document: 00513141172 Page: 8 Date Filed: 08/04/2015
Case 3:13-cv-00196-FM Document 52 Filed 08/04/15 Page 9 of 16

No. 14-51148

other residents, Refaei has failed to show that these employees "were not members of [Refaei's] protected class[es]." *Lee*, 574 F.3d at 259; *see also Jefferson v. Christus St. Joseph Hosp.*, 374 F. App'x 485, 491–92 (5th Cir. 2010) (unpublished) (per curiam) ("The Summary Report does not include any information regarding the race or national origin of these supposed comparators. . . . Accordingly, appellants have failed to demonstrate a prima facie case of race or national origin discrimination as to all appellants."). Refaei also fails to provide sufficient context with respect to these purported violations, such that we can determine whether these residents were indeed "similarly situated" to Refaei. For example, Refaei fails to identify the time frame of these other residents' purported violations. *See Lee*, 574 F.3d at 259 ("Employees . . . who were the subject of adverse employment actions too remote in time from that taken against the plaintiff generally will not be deemed similarly situated."). Moreover, from the information Refaei has provided, it appears that none of these comparators was treated more favorably than Refaei "under nearly identical circumstances," *id.* at 260, as none of the residents violated terms of their probation (nor does it appear that any were placed on probation multiple times), *see id.* ("The employment actions being compared will be deemed to have been taken under nearly identical circumstances when the employees being compared . . . have essentially comparable violation histories. And, critically, the plaintiff's conduct that drew the adverse employment decision must have been 'nearly identical' to that of the proffered comparator who allegedly drew dissimilar employment decisions." (footnote omitted)).

Accordingly, because Refaei has failed to establish this element of his prima facie case, the district court properly granted summary judgment in the Government's favor.

8

Case 1:15-cv-01052-MBH Document 1-4 Filed 09/21/15 Page 10 of 16
Case: 14-51148 Document: 00513141172 Page: 9 Date Filed: 08/04/2015
Case 3:13-cv-00196-FM Document 52 Filed 08/04/15 Page 10 of 16

No. 14-51148

B.     **Hostile Work Environment Claims**

Refaei also asserts hostile work environment claims under both Title VII and the ADEA.  To prove such a claim under Title VII, a plaintiff must prove that he:

> (1) belongs to a protected group; (2) was subjected to unwelcome harassment; (3) the harassment complained of was based on [the protected class]; (4) the harassment complained of affected a term, condition, or privilege of employment; (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action.

*Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012) (quoting *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002)).  "Harassment affects a term, condition, or privilege of employment if it is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  *Id.* (internal quotation marks omitted).  Similarly, in order to prove a hostile work environment claim under the ADEA, a plaintiff must establish that "the employee was subjected to harassment, either through words or actions, based on age" and that "the nature of the harassment was such that it created an objectively intimidating, hostile, or offensive work environment."  *Dediol v. Best Chevrolet, Inc.*, 655 F.3d 435, 441 (5th Cir. 2011).

Refaei fails to meet these standards.  In support of his hostile work environment claims, Refaei cites to only two purportedly discriminatory comments made by Dr. Cole.  First, Dr. Cole commented to Refaei that he should take Aricept, a medicine intended to slow the progression of memory loss.  Second, on one occasion when Dr. Cole, Dr. Refaei, and other residents were watching an episode of Jeopardy that made mention of a Fifth Century Muslim physician, Dr. Cole stated: "Muslim Physician?  That's something

9

Case 1:15-cv-01052-MBH Document 1-4 Filed 09/21/15 Page 11 of 16
Case: 14-51148    Document: 00513141172    Page: 10    Date Filed: 08/04/2015
Case 3:13-cv-00196-FM Document 52 Filed 08/04/15 Page 11 of 16

No. 14-51148

new."[5] Refaei also relies on several comments made by Dr. Cole that do not appear related to any protected class—e.g., that Refaei was a "bonehead," a "liar," and a "confabulator." These occasional comments, though offensive, did not create an environment so "permeated with discriminatory intimidation, ridicule, and insult, that [was] sufficiently pervasive to alter the conditions of [Refaei]'s employment." *Reed v. Neopost USA, Inc.*, 701 F.3d 434, 443 (5th Cir. 2012) (internal quotation marks omitted); *see id.* (denying ADEA hostile work environment claim where "coworkers called [the plaintiff] names like 'old man,' 'old fart,' 'pops,' and 'grandpa'"); *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) ("[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." (internal quotation marks and citation omitted)); *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 330 (5th Cir. 2009) ("These occasional statements did not create a hostile work environment because they were not severe, physically threatening, or humiliating; at most, they were unwanted and offensive.").

Accordingly, the district court properly granted summary judgment in the Government's favor with respect to the hostile work environment claims.

### C.   Breach of Contract Claim

Finally, although Refaei does not challenge the district court's dismissal of his breach of contract claim on the merits, he contends for the first time on appeal that the district court lacked subject matter jurisdiction over this claim. An issue of subject matter jurisdiction nonetheless "can never be forfeited or

---

[5] Dr. Cole stated in an affidavit that he likely made the first comment, but that "[w]hen persons have a difficult time remembering something, [he] often joke[s] that [he] can prescribe Aricept for them." Dr. Cole stated that he has no recollection of making the second comment.

10

Case 1:15-cv-01052-MBH Document 1-4 Filed 09/21/15 Page 12 of 16
Case: 14-51148 Document: 00513141172 Page: 11 Date Filed: 08/04/2015
Case 3:13-cv-00196-FM Document 52 Filed 08/04/15 Page 12 of 16

No. 14-51148

waived," "regardless of whether the error was raised in district court." *United States v. Cotton*, 535 U.S. 625, 630 (2002); *see also Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) ("[C]ourts . . . have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party").

Under the Tucker Act, the Court of Federal Claims has exclusive jurisdiction over claims sounding in breach of contract against the United States that exceed $10,000. *See* 28 U.S.C. § 1491(a)(1); 28 U.S.C. § 1346(a)(2); *see also Humphries v. Various Fed. USINS Emps.*, 164 F.3d 936, 941 (5th Cir. 1999) ("[T]he law of this circuit is clear that the Court of Claims has exclusive jurisdiction of a Tucker Act claim in excess of $10,000." (internal quotation marks and brackets omitted)). "We have consistently refused to allow district courts to adjudicate issues which belong solely to the Court of Claims, even though some other statute conferring jurisdiction would otherwise allow the district court to hear the case." *Wilkerson v. United States*, 67 F.3d 112, 118 (5th Cir. 1995). Here, Refaei's Complaint is silent as to the amount of damages he seeks in relation to his breach of contract claim, and that reason alone may preclude the district court's jurisdiction. *See Sheehan v. Army & Air Force Exch. Serv.*, 619 F.2d 1132, 1137 n.7 (5th Cir. 1980) (stating, in the Tucker Act context, that "a complaint is fatally defective unless it contains a proper allegation limiting the recovery sought," though the court allowed the plaintiff to amend his complaint to cure the defect on appeal), *rev'd on other grounds*, 456 U.S. 728 (1982); *Enplanar, Inc. v. Marsh*, 25 F.3d 1043, No. 93-7633, 1994 WL 261088, at *2 (5th Cir. June 2, 1994) (unpublished) (per curiam) (affirming the district court's dismissal for lack of subject matter jurisdiction under the Tucker Act because "the action seeks an unspecified amount of monetary

11

Case 1:15-cv-01052-MBH Document 1-2 Filed 09/21/15 Page 13 of 16
Case: 14-51148 Document: 00513141172 Page: 12 Date Filed: 08/04/2015
Case 3:13-cv-00196-FM Document 52 Filed 08/04/15 Page 13 of 16

No. 14-51148

damages, thus rendering it fatally defective").[6] In any event, even considering the allegations in the Complaint and the evidence submitted below, we conclude that Refaei seeks in excess of $10,000 for this claim. Although Refaei admits on appeal that he was owed only approximately $6,000 under his contract for the remainder of his term as a resident, he also seeks consequential damages relating to his loss in career advancement, as well as "[c]osts, including reasonable expert fees," "[a]ttorney's fees," and "[p]rejudgment and post-judgment interest." Moreover, Refaei makes clear in his briefing on appeal that he is seeking at least $10,000 in relation to his breach of contract claim. *Cf. Chichakli v. Szubin*, 546 F.3d 315, 317 (5th Cir. 2008) (concluding that, although "[i]t is not clear from the face of the Complaint that [the plaintiff] is seeking greater than $10,000 in damages," the plaintiff's allegations, "along with [the plaintiff]'s failure to dispute the Government's allegation that his claim is in excess of $10,000, justify a finding that his claim is for more than $10,000").

The Government argues that Refaei cannot now complain about the district court's lack of jurisdiction over this claim, as he invoked the jurisdiction of the district court by filing his lawsuit. However, "[l]itigants cannot bestow subject matter jurisdiction on federal courts by waiver or consent." *Elam v. Kansas City S. Ry. Co.*, 635 F.3d 796, 802 (5th Cir. 2011). Accordingly, we VACATE the district court's holding on preemption of the breach of contract claim, REVERSE the district court's judgment as to that claim and REMAND to the district court with instructions that the claim be transferred to the Court

---

[6] Refaei's Complaint does not expressly limit his requested damages to less than $10,000. *Cf. Woodard v. Marsh*, 658 F.2d 989, 992 (5th Cir. 1981) ("In his amended complaint, Woodard waived all claims for damages in excess of $9,999.99. Therefore, the district court had jurisdiction of his monetary claims.").

Case 1:15-cv-01052-MBH Document 1-4 Filed 09/21/15 Page 14 of 16
Case: 14-51148 Document: 00513141172 Page: 13 Date Filed: 08/04/2015
Case 3:13-cv-00196-FM Document 52 Filed 08/04/15 Page 14 of 16

No. 14-51148

of Federal Claims. *See* 28 U.S.C. § 1631 ("Whenever a . . . court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed . . . ."); *see also Amoco Prod. Co. v. Hodel*, 815 F.2d 352, 368 (5th Cir. 1987).

## IV. Conclusion

For the foregoing reasons, the judgment of the district court is AFFIRMED in part, VACATED and REVERSED in part, and REMANDED with instructions to transfer the contract claim to the Court of Federal Claims. Costs shall be borne by Refaei.

13

Case 1:15-cv-01052-MBH Document 1-4 Filed 09/21/15 Page 15 of 16
Case: 14-51148 Document: 00513141173 Page: 1 Date Filed: 08/04/2015
Case 3:13-cv-00196-FM Document 52 Filed 08/04/15 Page 15 of 16

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

No. 14-51148
Summary Calendar

United States Court of Appeals
Fifth Circuit
**FILED**
June 11, 2015
Lyle W. Cayce
Clerk

D.C. Docket No. 3:13-CV-196

MOHD N. REFAEI,

    Plaintiff - Appellant

v.

JOHN M. MCHUGH, Secretary of Department of the Army,

    Defendant - Appellee

Appeal from the United States District Court for the
Western District of Texas, El Paso

Before KING, JOLLY, and HAYNES, Circuit Judges.

## J U D G M E N T

This cause was considered on the record on appeal and the briefs on file.

It is ordered and adjudged that the judgment of the District Court is affirmed in part, vacated and reversed in part, and the cause is remanded to the District Court for further proceedings in accordance with the opinion of this Court.

IT IS FURTHER ORDERED that plaintiff-appellant pay to defendant-appellee the costs on appeal to be taxed by the Clerk of this Court.

Certified as a true copy and issued
as the mandate on Aug 04, 2015
Attest: *Lyle W. Cayce*
Clerk, U.S. Court of Appeals, Fifth Circuit

Print Form

# BILL OF COSTS

UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

Mohd N. Refaei _____ v. John M. McHugh, Secretary of Department of the Army   No. 14-51148

NOTE: The Bill of Costs is due in this office *within 14 days from the date of the opinion*, See FED. R. APP. P. & 5TH CIR. R. 39. Untimely bills of costs must be accompanied by a separate motion to file out of time, which the court may deny.

The Clerk is requested to tax the following costs against: Mohd N. Refaei

| COSTS TAXABLE UNDER Fed. R. App. P. & 5th Cir. R. 39 | REQUESTED | | | | ALLOWED (If different from amount requested) | | | |
|---|---|---|---|---|---|---|---|---|
| | No. of Copies | Pages Per Copy | Cost per Page* | Total Cost | No. of Documents | Pages per Document | Cost per Page* | Total Cost |
| Docket Fee ($500.00) | | | | | | | | |
| Appendix or Record Excerpts | | | | | | | | |
| Appellant's Brief | | | | | | | | |
| Appellee's Brief | 7 | 56 | 0.15 | 58.80 | 7 | 56 | .15 | 58.80 |
| Appellant's Reply Brief | | | | | | | | |
| Other: Binding per 5th R. 32.2.3 | 7 | 1 | 1.50 | 10.50 | 7 | | 1.50 | 10.50 |
| | | | Total $ | 69.30 | | | | 69.30 |

Costs are hereby taxed in the amount of $ 69.30 this 4th day of _____ 2015

State of
County of

I   Eduardo R. Castillo _____ , do hereby swear under penalty of perjury that the services for which fees have been charged were incurred in this action and that the services for which fees have been charged were actually and necessarily performed. A copy of this Bill of Costs was this day mailed to opposing counsel, with postage fully prepaid thereon. This 11th day of June , 2015 .

/s/ Eduardo R. Castillo
(Signature)

Attorney for   John M. McHugh, Secretary, Dept. of Army

Costs are taxed in the amount of $ 69.30 _____ day of August , 2015 .

LYLE W. CAYCE, CLERK

By _____
  Deputy Clerk

*SEE REVERSE SIDE FOR RULES
GOVERNING TAXATION OF COSTS